**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GARY MATTHEWS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  07-3533** |
| **N. BURL CAIN, WARDEN LOUISIANA STATE PENITENTIARY** | **SECTION "S"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Gary Matthews ("Matthews"), is a convicted inmate presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Matthews name is spelled "Mathews" in the state court record.  For consistency, the Court will use the spelling "Matthews" in this report except when quoting or citing case captions where the spelling differs.

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

On December 19, 1997, Matthews and a co-defendant, Leonard Paul Pharagood, were indicted by a grand jury in Terrebonne Parish Case No. 303250 for the first degree murders of Bennie Lionel Carter, Gregory Robinson, and Magdalene Johnson.[3] They were separately indicted in Case No. 303259 for the related attempted first degree murder of Lela Arcement.[4]

The indictment in Case No. 303250 was later amended on August 31, 1999, to charge Matthews and Pharagood with the second degree murders of Carter, Robinson, and Johnson.[5] The indictment was amended a second time on September 27, 1999, to charge Matthews, Pharagood, and co-defendant Christopher John Gage, with the second degree murders of Carter, Robinson, and Johnson, and the attempted second degree murder of Lela Arcement.[6]

The record reflects that, on December 15, 1997, several people gathered at a trailer owned by Bennie Carter, which was located in Terrebonne Parish. This included Marida Arcement, who lived with Carter in the trailer, her sister, Lela Arcement, Evelyn Robertson, Gregory Robinson, and his girlfriend, Magdalene Johnson.[7]

Matthews visited the trailer at least twice that evening. Each time, he purchased one rock of cocaine from Marida Arcement and Bennie Carter, and then left. At approximately 8:00 p.m., a person identifying himself as "John" knocked on the trailer door. Marida Arcement, and possibly Bennie Carter, answered the door. Gage, Matthews, and Pharagood, entered the trailer. Lela

---

[3]St. Rec. Vol. 2 of 15, Indictment, Case No. 303250, 12/19/97.

[4]St. Rec. Vol. 2 of 15, Indictment, Case No. 303259, 12/19/97.

[5]St. Rec. Vol. 2 of 15, Amended Indictment, Case No. 303250, 8/31/99.

[6]St. Rec. Vol. 2 of 15, Amended Indictment, Case No. 303250, 9/27/99.

[7]These facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Mathews*, 809 So. 2d 1002, 1007-1008 (La. Ct. App. 2001); St. Rec. Vol. 12 of 15, 1st Cir. Opinion, 2000-KA-2115, pp. 3-4, 9/28/01.

Arcement was seated in a chair near the door through which they entered. Evelyn Robertson, Gregory Robinson, and Magdalene Johnson were seated at the kitchen table.

Upon entering the trailer, Gage approached Gregory Robinson and said, "Hey man, where my sh_t at?" Robinson responded, "Man, I got your sh_t; let's go on the outside." At that point, Gage shot Robinson several times in the stomach and in the face. Gage then pointed the gun at Lela Arcement and shot her several times in the stomach and in the face. Matthews stood blocking the trailer door throughout this time.

Evelyn Robertson, Marida Arcement, Bennie Carter and Magdalene Johnson retreated towards the rear bedroom. Bennie Carter exited the trailer through the bedroom window, followed by Magdalene Johnson. Evelyn Robertson and Marida Arcement heard several more shots outside of the trailer. They heard someone outside say, "they still have somebody left in the house," and then, "let's go, forget about it."

When the police arrived, they found Lela Arcement in the chair, bleeding profusely but still alive. Gregory Robinson was lying dead in the doorway. Magdalene Johnson was found outside with her lifeless body leaning against the fence with gunshot wounds to her face and stomach. Bennie Carter was found the next morning, lying dead about 82 feet from the trailer.

Autopsies of the three murder victims revealed that Carter, Johnson, and Robinson died of multiple gunshot wounds. Lela Arcement underwent several surgeries and survived four gunshot wounds. According to the Louisiana State Police Crime Lab, the wounds were caused by two different guns.

Matthews, Pharagood, and Gage were jointly tried before a jury on January 11 through 14, and 18 through 21, 2000.[8]  The jury found Pharagood not guilty on each of the four counts.[9]  Gage was found guilty of the manslaughter of Carter, the second degree murder of Robinson, the manslaughter of Johnson, and the attempted manslaughter of Arcement.[10]  Matthews was found not guilty of the second degree murders of Carter and Johnson and not guilty of attempted second degree murder of Arcement.[11]  The jury did find him guilty of the second degree murder of Robinson.[12]

On February 9, 2000, the Trial Court denied Matthews's motions for post-verdict judgment of acquittal and for a new trial.[13]  After waiver of legal delays, the Trial Court sentenced Matthews to serve life in prison without benefit of parole, probation, or suspension of sentence.  The Court also denied Matthews's motion to reconsider the sentence.[14]

On direct appeal, Matthews's appointed counsel raised five assignments of error:[15] (1) it was fatal error when the State amended the indictment to add the attempted second degree murder charge

---

[8]St. Rec. Vol. 11 of 15, Trial Minutes, 1/11/00; Trial Minutes, 1/12/00, Trial Minutes, 1/13/00; Trial Minutes, 1/14/00; Trial Minutes, 1/18/00; Trial Minutes, 1/19/00; Trial Minutes, 1/20/00; Trial Minutes, 1/21/00; St. Rec. Vol. 4 of 15, Trial Transcript, 1/11-14, 18-21/00; St. Rec. Vols. 5 through 11 of 15, Trial Transcript (continued).

[9]St. Rec. Vol. 11 of 15, Trial Minutes, 1/21/00; St. Rec. Vol. 4 of 15, Jury Verdict Form (Pharagood), 1/21/00.

[10]St. Rec. Vol. 11 of 15, Trial Minutes, 1/21/00; St. Rec. Vol. 4 of 15, Jury Verdict Form (Gage), 1/21/00.  On March 10, 2000, the Court sentenced Gage to serve consecutive sentences of 40 years on Counts 1 and 3, life on Count 2, and 20 years on Count 4.  St. Rec. 4 of 15, Minute Entry, 3/10/00.

[11]St. Rec. Vol. 11 of 15, Trial Minutes, 1/21/00; St. Rec. Vol. 4 of 15, Jury Verdict Form (Matthews), 1/21/00.

[12]*Id*.

[13]St. Rec. Vol. 4 of 15, Minute Entry, 2/9/00; Hearing Transcript, 2/9/00; Motion for Post-Verdict Judgment of Acquittal, 1/28/00; Motion for New Trial, 1/28/00.

[14]St. Rec. Vol. 4 of 15, Minute Entry, 2/9/00; Hearing Transcript, 2/9/00; Motion to Reconsider Sentence, 3/13/00; St. Rec. Vol. 11 of 15, Letter from the Clerk of Court, 9/12/00.

[15]*State v. Mathews*, 809 So. 2d at 1002; St. Rec. Vol. 12 of 15, 1st Cir. Opinion, 2000-KA-2115, 9/28/01; St. Rec. Vol. 11 of 15, Appeal Brief, 00-KA-2115, 1/24/01.

and a new defendant, Christopher Gage; (2) the Trial Court erred in denying the motion to sever the

trials; (3) the Trial Court erred in sustaining the State's objections to defense questions to state

witnesses regarding their drug habits and in denying a mistrial in light of the violation of *Brady v.

Maryland*, 373 U.S. 83, 87 (1963);[16] (4) the evidence was insufficient to support the verdict; and (5)

the Trial Court erred in denying the motion for post-verdict judgment of acquittal based on the

insufficiency of the evidence.

On September 18, 2001, the Louisiana First Circuit Court of Appeal affirmed Matthews's

conviction and sentence. The Court resolved that Matthews waived his right to object to the

amended indictment because he did not timely raise the issue citing La. Code Crim. P. arts. 495[17]

and 841[18] and *State v. Peters*, 298 So. 2d 276 (La. 1974).[19] The Court also found no merit to

Matthews's remaining claims.

On October 18, 2001, Matthews submitted a timely[20] writ application with the Louisiana

Supreme Court in which he raised the same grounds for relief.[21] The Court denied the application

---

[16] In *Brady*, the Supreme Court required the State to produce exculpatory and impeachment evidence for reasons of due process, and a violation thereof is reviewable on federal habeas review. *Brady*, 373 U.S. at 87.

[17] Article 495 provides that "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment."

[18] At the time, Article 841 provided in relevant part that "[a]n irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection."

[19] *overruled in part on other grounds*, *State v. McZeal*, 352 So. 2d 592 (La. 1977) (discussing misjoinder of capital with non-capital offenses).

[20] La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. Matthews's writ application bears a postal meter of October 18, 2001.

[21] St. Rec. Vol. 11 of 15, La. S. Ct. Letter, 2001-KO-2907, 10/30/01 (postal meter 10/18/01); Writ Application, 03-KO-1179, 4/28/03 (signed 4/8/03). The State erroneously references another writ application, 2001-K-2873, which had nothing to do with Matthews. That writ application was filed by the State to challenge rulings on issues raised in the joint appeal by Gage. St. Rec. Vol. 11 of 15, La. S. Ct. Order, 2001-K-2873, 9/13/02; La. S. Ct. Letter, 2001-K-2873,

on October 14, 2002, without stated reasons.[22]  Matthews's conviction became final 90 days later, on Monday, January 13, 2003, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period).

On or about August 6, 2003, Matthews mailed an application for post-conviction relief to the Trial Court raising two grounds for relief: (1) the prosecutor made prejudicial remarks, cited incorrect facts, and mislead the jury during closing argument; and (2) counsel was ineffective for failure to object to the prosecutor's closing arguments.  Though the state court record does not contain a file-stamped copy of this application, the State does not contest that the application was submitted to the Trial Court.[23]

According to Matthews's later-filed state court pleadings, the application was mailed to the Trial Court on August 6, 2003.[24]  On November 12, 2003, he filed a motion seeking leave to file supplemental claims.[25]  The Trial Court denied the motion on November 17, 2003.[26]

---

10/29/01.

[22]*State v. Matthews*, 827 So. 2d 412 (La. 2002); St. Rec. Vol. 11 of 15, La. S. Ct. Order, 2001-KO-2907, 10/14/02.

[23]*See* Rec. Doc. No. 7, p. 4.  The state references February 11, 2003, as the filing date.  There is no indication where the State obtained this date.

[24]St. Rec. Vol. 15 of 15, Record Reference and Mail Slips, 12/3/05.  Matthews suggestion in some pleadings that he submitted the original application in February, 2003 has no basis in the record, especially in light of the mail slips.

[25]St. Rec. Vol. 12 of 15, Motion to Supplement, 11/12/03 (date 11/7/03).

[26]St. Rec. Vol. 12 of 15, Trial Court Order, 11/17/03.

Thereafter, on July 19, 2005, Matthews filed a writ application with the Louisiana First Circuit apparently addressing his post-conviction claims.[27] The Court granted the application for the sole purpose of transferring it to the district court for consideration as an application for post-conviction relief, noting that the motion to supplement had been addressed on November 17, 2003.[28]

Over two years later, on December 3, 2005, Matthews submitted another copy of the application for post-conviction relief raising two original and three supplemental claims:[29] (1) he was denied due process where the prosecutor made prejudicial remarks, cited incorrect facts, and mislead the jury during closing argument; (2) counsel was ineffective for failure to object to the prosecutor's closing arguments; (3) counsel was ineffective for failure to object to the amendment to the grand jury indictment which improperly added Gage as a defendant; (4) counsel was ineffective for not recalling the State's witnesses to question their drug use after the *Brady* evidence was admitted at trial; and (5) the State failed to disclose evidence of its witnesses drug use in violation of *Brady*.

Recognizing the two year quandary in processing the application, the Trial Court addressed the five claims in its order issued March 1, 2006.[30] The Court first noted that Matthews's claims were repetitive of issues addressed by the Louisiana First Circuit on direct appeal. The court recited the findings of the appellate court, which included: the evidence was sufficient to support the verdict; there was no due process violation during trial; there was no *Brady* violation or prejudice from the late disclosure of the information; there were no jurisdictional defects in the amended

---

[27]The record does not contain a copy of this writ application, No. 2005-KW-1612. The filing date was obtained from the office of the clerk of court for the Louisiana First Circuit.

[28]St. Rec. Vol. 14 of 15, 1st Cir. Order, 2005-KW-1612, 10/31/05.

[29]St. Rec. Vol. 15 of 15, Uniform Application for Post-Conviction Relief, 12/13/05 (postmarked 12/3/05).

[30]St. Rec. Vol. 15 of 15, Trial Court Order, 3/1/06.

indictment; and, there was no prejudice arising from the denial of the severance. Based on these findings made on direct appeal, the Court resolved that Matthews failed to establish that his counsel was ineffective.

Matthews sought review of these same claims in the Louisiana First Circuit.[31] The Court denied relief without stated reasons on June 26, 2006.[32] The Louisiana Supreme Court also denied the application to that Court without stated reasons in its opinion issued April 20, 2007.[33]

## II.    Federal Petition

On June 28, 2007, the Clerk of Court filed Matthews's petition for federal habeas corpus relief, in which he raised ten claims:[34]

(1) it was fatal error when the State amended the indictment to add the attempted second degree murder charge and a new defendant, Christopher Gage;

(2) the Trial Court erred in denying the motion to sever the trials;

(3) the Trial Court erred in sustaining the State's objections to defense questions to state witnesses regarding their drug habits and in denying a mistrial in light of the violation of *Brady*;

(4) the evidence was insufficient to support the verdict;

(5) the Trial Court erred in denying the motion for post-verdict judgment of acquittal based on the insufficiency of the evidence;

(6) he was denied due process where the prosecutor made prejudicial remarks, cited incorrect facts, and mislead the jury during closing argument;

---

[31]St. Rec. Vol. 1 of 15, 1st Cir. Writ Application, 2006-KW-0489, 3/23/06 (signed 3/22/06).

[32]St. Rec. Vol. 1 of 15, 1st Cir. Order, 2006-KW-0489, 6/26/06.

[33]*State ex rel. Mathews v. State*, 954 So. 2d 156 (La. 2007); St. Rec. Vol. 1 of 15, La. S. Ct. Order, 2006-KH-1936, 4/20/07; La. S. Ct. Writ Application, 06-KH-1936, 8/2/06 (signed 7/18/06); St. Rec. Vol. 15 of 15, La. S. Ct. Letter, 2006-KH-1936, 8/2/06 (showing postal meter 7/19/06).

[34]Rec. Doc. No. 1.

(7) counsel was ineffective for failure to object to the prosecutor's closing arguments;

(8) counsel was ineffective for failure to object to the amendment to the grand jury indictment which improperly added Gage as a defendant;

(9) counsel was ineffective for not recalling the State's witnesses to question their drug use after the *Brady* evidence was admitted at trial; and

(10) the State failed to disclose evidence of its witnesses drug use in violation of *Brady*.

The State filed a response in opposition to Matthews's petition arguing that part of Matthews's first claim was in procedural default and the remaining claims are without merit.[35]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[36] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 23, 2007.[37]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[35]Rec. Doc. No. 7.

[36]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Matthews's federal habeas petition on June 28, 2007, when the filing fee was paid.  Matthews dated his signature on the petition on May 23, 2007.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 846 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 377)).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State concedes exhaustion of the claims and the timeliness of the petition in its opposition response. The State raised the procedural default of Matthews's first claim, challenging the validity of the amended indictment on the grounds of misjoinder of defendants and offenses. The record reflects that on direct appeal, the Louisiana First Circuit determined that Matthews waived any objection he had to the validity of the amended indictment because he did not timely or properly raise the objection to the trial court under La. Code Crim. P. arts. 495 and 841 and *State v. Peters*, 298 So. 2d at 276. The Court will address this procedural default before proceeding to the merits of the remaining claims.

## IV.    **Procedural Default**

The record demonstrates that Matthews's first claim, challenging the propriety of the amended indictment, was not addressed on the merits because Matthews had not entered a proper or timely objection in the trial court before raising the claim on appeal. The State raises this procedural default in its response to Matthews's petition.

Matthews's counsel challenged on direct appeal the validity of the amended indictment, insofar as it was amended to add a fourth count and a new defendant, Christopher Gage. The Louisiana First Circuit held that Matthews waived the objection to the indictment because he did not timely or properly raise the objection by motion to quash or otherwise to the trial court under La. Code Crim. P. arts. 495 and 841, as discussed in *State v. Peters*, 298 So. 2d at 276. The claim was again raised in the subsequent writ application to the Louisiana Supreme Court, which denied relief without providing reasons. Therefore, the denial of relief by the higher court is presumed to

be based on the same reasons set forth by the Louisiana First Circuit. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The denial of relief on Matthews's challenge to the validity of the amended indictment was based on state procedural grounds and his procedural default under the state procedural rules cited by the state courts. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

A.    **Independent State Grounds**

For the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural

rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902.

In this case, the state courts held that Matthews's challenge to the amended indictment was not preserved by timely filed motion to quash or contemporaneous objection under La. Code Crim. P. arts. 495 and 841, as discussed in *State v. Peters*. The bases for the state courts' dismissal of this claim was therefore independent of federal law and relied strictly on state procedural requirements. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.    Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))); *accord West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding

fundamentally unfair.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).  For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such a basis exists in state law, the bar must stand.

### 1.      La. Code Crim. P. art. 495

As noted above, the Louisiana First Circuit barred review of Matthews's claim because he had failed to file a pre-trial motion to quash the amended indictment as required by La. Code Crim. P. art. 495, as reiterated and discussed in *State v. Peters*, 298 So. 2d at 276.  Article 495 requires that objections to misjoinder of defendants or of offenses can only be urged by pretrial motion to quash the indictment.

The federal courts have held that the failure to preserve a claim under Article 495 is an adequate state grounds which bars review by the federal courts in a habeas corpus proceeding. *See Pierce v. Warden, La. State Penitentiary*, No. 06-1185, 2009 WL 55937 (W.D. La. Jan. 6, 2009) (finding that Louisiana court's regularly invoke Art. 495 to hold that claims based on improper joinder are waived unless raised by pretrial motion to quash). The Louisiana courts regularly and even-handedly apply La. Code Crim. P. art. 495 to find misjoinder claims waived where a motion to quash was not filed. *See, e.g.*, *State v. Landry*, 21 So. 3d 1148 (La. Ct. App. 2009) (citing La. Code Crim. Proc. Ann. art. 495 (2010); *State v. Mallett*, 357 So. 2d 1105 (La. 1978) (misjoinder claim is waived in not raised by motion to quash), *cert. denied*, 439 U.S. 1074 (1979)); *State v. Anderson*, 2 So. 3d 622 (La. Ct. App. 2009) (same); *State v. Stevens*, 978 So. 2d 535 (La. Ct. App. 2008) (same); *State v. Williams*, 969 So. 2d 744 (La. Ct. App. 2007) (same); *State v. Grainer*, 834 So. 2d 555 (La. Ct. App. 2002) (same).

In this case, the Court finds that the state procedural bar imposed pursuant to Matthews's failure to comply with La. Code Crim. P. art. 495 is adequate to bar review of his claim challenging the joinder of defendants and offenses in the amended indictment.

### 2.    Contemporaneous Objection under La. Code Crim. P. art. 841

The state courts also denied relief to Matthews on the validity of the amended indictment issue because of his failure to make the contemporaneous objections to preserve the claim for appeal. Louisiana law, specifically La. Code Crim. P. art. 841, provides that an "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." It is well settled that the "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S.

72, 87-88 (1977).  Matthews's claim challenging the validity of the amended indictment based on misjoinder of defendants and offenses is barred from federal review.

**C.      Cause and Prejudice**

To establish a cause for his procedural default, Matthews must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  He has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his, or his counsel's, ability to raise this claim in a procedurally proper manner.

There is no obvious cause in the record for the failure to timely challenge the amended indictment as was required by Louisiana law.  Reading Matthews's claims broadly, his arguments can be read to suggest that his trial counsel's failure to lodge proper and timely objections stands as cause for the default under La. Code Crim. P. arts. 495 and 841.  First, the law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486.  Furthermore, the Court has reviewed Matthews's ineffective assistance of counsel claim based on the failure to object and finds it to be without merit.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.    Fundamental Miscarriage of Justice

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Matthews has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. The Court has also reviewed his *Brady* claim and his insufficient evidence claim later in this Report and has found that the claims are meritless. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Matthews has not met this alternative exception to the procedural bar, his procedurally defaulted claim challenging the validity of the amended indictment on grounds of

misjoinder of defendants and offenses must be dismissed with prejudice without review of the merits. The Court, however, will proceed to review of the remaining claims.

## V.    Standards of Review of the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210

F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) )(brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.  Denial of Motion to Sever (Claim No. 2)

Matthews argues that the Trial Court erred in denying the motion to sever his trial from that of Gage because their defenses were antagonistic. He claims that, under Louisiana law, he was

entitled to the severance. The State argues that this claim is without merit because Matthews has not established that the defenses were antagonistic as required by state law.

Matthews raised this claim on direct appeal to the Louisiana First Circuit. The Court referenced La. Code Crim. P. art. 704, which mandates that jointly indicted defendants shall be tried jointly, unless the State elects to try them separately or on motion of a defendant and after a contradictory hearing the trial court satisfies itself that justice requires severance. The Court held that the Trial Court did not abuse its discretion in denying the motion to sever because Matthews did not present convincing evidence that the defenses were antagonistic.

The Court also found that Matthews failed to establish prejudice, because he was able to urge his defense that he did not have a weapon and did not participate in the shootings. The Court noted that there was sufficient evidence for the jury's verdict of guilty as a principal for his aiding and abetting in the shootings. This was the last reasoned decision, because the Louisiana Supreme Court denied Matthews subsequent writ application without stated reasons. *See Ylst*, 501 U.S. at 802.

The denial of a motion to sever under Louisiana law is not reviewable under federal habeas law. *See Manning v. Warden, La. State Penitentiary*, 786 F.2d 710, 711-12 (5th Cir. 1986). Instead, a federal court must determine whether there has been a violation of the defendant's due process rights which would have rendered his trial as a whole to be fundamentally unfair. *Manning*, 786 F.2d at 711-12. Matthews has not met that burden here.

The question of whether a petitioner's due process rights were violated is a question of law. *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008). This court must determine if the state courts' decision was contrary to, or involved an unreasonable application of, Supreme Court precedent.

To assess whether Matthews received due process, the Court will consider the parameters under which the trials could have been severed. To establish that justice requires a severance in Louisiana, a defendant must show by convincing evidence that his defense will be antagonistic to the defense offered by the other defendant. *State v. Vale*, 650 So. 2d 379, 385 (La. Ct. App. 1995), *aff'd in part*, *rev'd in part on other grounds*, 666 So. 2d 1070 (La. 1996). In *State v. McGraw*, 366 So. 2d 1278 (La. 1978), the Louisiana Supreme Court recognized that persons jointly indicted are not entitled to a severance of trial as a matter of right and that the trial court's ruling lies within the discretion of the trial judge. *Id*. at 1283. The *McGraw* court went on to explain that the mere allegation of antagonistic defenses is insufficient and a defendant must show that actual prejudice will result from a joint trial. The actual prejudice standard requires a showing that defendant would probably not have been convicted had he been accorded a separate trial.

Furthermore, under Louisiana law, justice does not require severance where only the extent of participation of each defendant is at issue. *State v. Gaskin*, 412 So. 2d 1007 (La. 1982); *State v. Simmons*, 381 So.2d 803 (La. 1980), *cert. denied*, 449 U.S. 1036 (1980). When both defendant's statements show that both defendants participated as principals to the offense, no severance is required. *Id*.; *State v. Williams*, 416 So. 2d 914 (La. 1982).

The United States Supreme Court has held that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Thus, under federal law, "[t]he test for antagonistic defenses requires that the defenses be irreconcilable or mutually exclusive: the jury, in order to believe one defendant's defense must necessarily disbelieve the antagonistic defense of another defendant."

*United States v. Rocha*, 916 F.2d 219, 231 (5th Cir. 1990), *cert denied*, 500 U.S. 934 (1991) (citing *United States v. Hernandez*, 842 F.2d 82, 86 (5th Cir. 1988)); *McGraw v. Lynn*, 990 F.2d 625, No. 92-3505, 1993 WL 117782 (5th Cir. Mar. 23, 1993). Thus, antagonistic defenses justify severance only when the defenses are "antagonistic to the point of being mutually exclusive or irreconcilable, so that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Sandoval*, 847 F.2d 179, 183 (5th Cir. 1988) (citation omitted); *Zafiro*, 506 U.S. at 539-40 (mutually antagonistic defenses are not prejudicial per se and question of severance is left to sound discretion of district court).

In this case, Matthews argues that the joint trial affected his ability to take the stand in his own defense, because he would have had to face damaging impeachment testimony from his co-defendants. He claims that his ability to place the blame on Gage was inhibited by his inability to take the stand.

The record reflects that Matthews's counsel filed a motion to sever the trials based on antagonistic defenses, the first of which was heard by the Court on October 13, 1999.[38] Counsel argued that the severance was based on a letter and statement from a witness, identified as inmate Reginald Henry, who apparently told the District Attorney that Matthews made a jailhouse confession to him and was bribing witnesses to change their testimony.[39] and who was the first to assert that Matthews had a gun and did some of the shooting. Prior to that, there was only one witness/victim, Lela Arcement, who stated that there was only one shooter and it was not Matthews.

---

[38]St. Rec. Vol. 3 of 15, Motion for Severance, 10/13/99.

[39]St. Rec. Vol. 7 of 15, Hearing Transcript, pp. 5-6, 10/13/99.

He argued that the Henry letter and statement were the first evidence that could finger Matthews's role as shooter rather than just possibly a principal by his presence.[40]

The State opposed the motion on the basis that Matthews's statement to Henry was just that, his own statement.[41] It was not a statement by a co-defendant which would cause conflict for severance purposes. The Trial Court denied the motion on the basis that Matthews's statement to Henry was his own inculpatory statement that could be used against him at trial.[42]

As was clearly shown from this exchange before the Trial Court, Matthews's confession statement to another inmate created a problem for his defense. This was not a conflict created by the defense of another co-defendant. Matthews made no showing of an antagonistic defense, but instead pointed out a new wrinkle in his ability to claim non-participation as his defense. The conflict created by the Henry letter and statement, therefore, was between the State's case and Matthews's defense. As it turns out, Henry was not called to testify.

Furthermore, as noted by the state appellate court, Matthews's defense at trial was that he had no gun and that he did not do anything while in the trailer.[43] Although he did not testify, this line of defense was made clear in counsel's opening statement.[44]

The co-defendant, Gage, also did not testify. His defense, based on his counsel's opening statement, was that the State had no evidence that any of the defendants did anything, that no guns

---

[40]*Id*. at 38.

[41]*Id*. at 39-40.

[42]*Id*. at 41-42.

[43]St. Rec. Vol. 6 of 15, Trial Transcript, pp. 481-82.

[44]*Id*.

were found on any defendant, and that one witness would testify that his own client, Gage, was the

shooter, although there was no proof to support the witnesses' statement.[45]

The record does not support that an antagonistic defense existed before trial or that one was

posited to the jury. The jury could have believed Matthews's defense of non-involvement, as they

did with Pharagood, separate and apart from the Gage's defense of lack of proof. The defenses were

not so irreconcilable to warrant severance. *See United States v. Stotts*, 792 F.2d 1318, 1322 (5th Cir.

1986) (holding that co-defendants' identical defenses of non-involvement were not irreconcilably

antagonistic since "[i]t would be consistent . . . to find that none of the appellants were guilty . . .

and that . . . unidentified [people] . . . framed the appellants"); *United States v. Swanson*, 572 F.2d

523, 529 (5th Cir.) (holding that defenses of lack of intent and non-involvement were not

irreconcilably antagonistic), *cert. denied*, 439 U.S. 849 (1978). Matthews has not shown a serious

risk that his joint trial compromised his right to a fair trial and he can not establish a due process

violation resulting from the denial of his motion to sever. *See Zafiro*, 506 U.S. at 539.

The state courts' denial of relief on this issue was not contrary to or an unreasonable

application of Supreme Court law. Matthews is not entitled to relief on this claim.

## VII. Trial Court Erred in Sustaining State's Objections to Impeachment Testimony and Denying Motion for Mistrial Based on the State's *Brady* Violation (Claim No. 3) and the State Violated *Brady* (Claim No. 10)

Matthews argues that the Trial Court erred in sustaining the State's objections to defense

counsel's questions seeking to address impeachment evidence of the drug use of the various state

witnesses. He claims this to be true based on the late disclosure of evidence by the State that its

witnesses and victims used crack cocaine on the day of the murders. He claims that this violated

---

[45]*Id*. at 488-89.

*Brady* and caused the trial court's ruling to be prejudicial in violation of his right to confrontation. He also claims that the Trial Court erred in denying the defense's motion for mistrial based on the *Brady* violation.

In further support of the *Brady*, claim, Matthews argues that the State withheld evidence of its witnesses' use of drugs on the day of the murders. Matthews alleges that counsel made a specific request for the statements made by Lela Arcement and Evelyn Robinson regarding drug use at the trailer on the day of the murders. He contends that the statements were not provided prior to trial. He argues that the Trial Court erred in overruling the *Brady* objection finding that this was not a failure to disclose issue under *Brady*, but instead was a matter of the timing of the disclosure.

The State argues in its response that the information was not suppressed in violation of *Brady*, that the defense knew of the drug activity before trial, and that the limitation to the questioning was appropriate.

A review of the record and transcript reflects that, after close of the State's evidence, Gage's attorney argued to the Court that the State's witnesses had testified differently than their respective statements to police, specifically with respect to their own drug use.[46] He noted that Lela Arcement suggested in her testimony that she thought that, a long time ago, she had told someone in the District Attorney's Office that she used drugs. He argued that this caused considerable harm in preparing the defense. He indicated that he would at least like to see any statements made and possibly to move for a mistrial. Counsel for Matthews and Pharagood joined in the motion.[47]

---

[46]St. Rec. Vol. 10 of 15, Trial Transcript, pp. 1586-1588.

[47]*Id*. at 1589.

The Trial Court denied the motion after hearing argument that the defense counsel knew that drug use was at issue and that they were notified prior to trial of the drug use, although the notice was not in writing.  The Court also noted that counsel was able to more-than-adequately cross-examine the witnesses about the drug use.

Matthews challenged the restricted cross-examination and denial of the mistrial issue on direct appeal.  The Louisiana First Circuit noted first, that the issue before it was not one of failure to disclose but the timing of the disclosure by the State.  The Court found that there was no prejudice to the defense.  The defense had access to all of the medical records showing elevated cocaine levels in all of the victims, including the survivor.  The defense also knew that one victim was found with a crack pipe in her hand.  The court held that the defendants had an opportunity to question the State's witnesses about their drug use and that each witness freely admitted using drugs that day.

With respect to the defense's questioning, the State's objection was that there was no expert evidence of the cumulative effect of crack use so that any prior use would be immaterial.  The defense was allowed to question the witnesses and victim about their drug use that day, which would be relevant to their ability to recall the events.  In light of this, the Louisiana First Circuit did not find any error in the Trial Court's evidentiary ruling.  This was the last reasoned decision on these issues, because the Louisiana Supreme Court denied Matthews subsequent writ application without stated reasons.  *See Ylst*, 501 U.S. at 802.

Matthews first raised this claim that the State withheld *Brady* evidence in his application for post-conviction review.  In the last reasoned opinion on this issue, the Trial Court first noted that the *Brady* issue was discussed by the Louisiana First Circuit on direct appeal in connection with

Matthews's claim that the Trial Court erred in denying the mistrial based on the *Brady* information.[48] The appellate court noted that, while the evidence was *Brady* in nature, the real issue was the timing of the disclosure. The prosecutors argued that they did not learn that the State's witnesses used crack on the day of the incident until immediately before trial during the preparation of the witnesses. The State claimed that this did not appear in the police reports and the investigating officers did not question the witnesses about their drug use that day. The State notified the defense counsel immediately upon discovering this information.

Based on this, the Louisiana First Circuit found that the defense had adequate opportunity to cross-examine the witnesses on their drug use, the defense was allowed to immediately retain an expert to address the effects of the drug use, and that the defense had not been prejudiced by the late notice. The Court further noted that the defendants had suspected that drugs had been used in the trailer that day, especially since all of the victims had elevated levels of crack cocaine in their systems. The defense counsel had adequate evidence and information before them to suggest that the witnesses and victims used drugs that day. The Court also resolved that the Trial Court did not create any prejudice to the defense through the limitations on counsel's cross-examination of the State's witnesses. The Trial Court resolved that the appellate court's reasoning demonstrated that Matthews's conviction should be upheld and his claim for relief denied.

## A. Limitation on Questions to State Witnesses

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of

---

[48]St. Rec. Vol. 15 of 15, Trial Court Order, 3/1/06; St. Rec. Vol. 12 of 15, 1st Cir. Opinion, 2000-KA-2115, 9/18/01.

evidence, provided that those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of Cal.*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)

In this case, under a broad reading, Matthews suggests that the limitation placed on counsel's ability to impeach the State's witnesses violated the Confrontation Clause. The Confrontation Clause and the right to cross-examine are implicated by the admission of evidence, the credibility of which can not be challenged because of the absence of the declarant or an inability to adequately cross-examine the declarant. *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997). The Supreme Court, in defining the scope of effective cross-examination under the Confrontation Clause, the United States Supreme Court has stated:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

*Davis v. Alaska*, 415 U.S. 308, 316 (1974).

The federal courts have held that the scope of cross-examination is within the discretion of the trial court and, as such, it may impose reasonable limits on defense counsel's inquiry. *Wilkerson v. Cain*, 233 F.3d 886 (5th Cir. 2000). The Trial Court's "discretionary authority comes about only after sufficient cross examination has been granted to satisfy the Sixth Amendment." *United States*

*v. Landerman*, 109 F.3d 1053, 1061 (5th Cir. 1997) (citing *United States v. Restivo*, 8 F.3d 274 (5th Cir. 1993)).

To this end, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Accordingly, "[t]he relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).

The record indicates that the jury had the necessary information before it to consider the affects of the witnesses' drug use in spite of the fact that counsel's ability to cross-examine the State's witnesses about their long-term drug use was limited by the Trial Court. The record reflects that the defense counsel asked Evelyn Robertson about how often she smoked crack cocaine.[49] The State objected on the basis that her past drug habits were not relevant. All three of the defense counsel argued to the Trial Court that this information was relevant to impeach or challenge her credibility and her memory.[50] This was in part based on the testimony of the State's forensic physician, Dr. Saal, who testified that cumulative cocaine use could impact a person's memory. The Trial Court determined that, while the doctor had so testified, the testimony was general information and was without quantification or specificity as to how and in what amount it would affect memory.

---

[49]St. Rec. Vol. 8 of 15, Trial Transcript, p. 1165.

[50]*Id*. at 1165-68.

Based on this, the Court sustained the State's objection and limited the scope of the defense counsel's questioning to drug use on the day of the shootings.[51]

The Trial Court deemed it sufficient to allow the defense counsel to question the State's witnesses about their drug use on the day of the shootings, because there was no evidence in the record to make the long-term use relevant. This decision was within the court's discretion based on the record before it.

Nevertheless, as noted above, each of the witnesses admitted to having smoked crack once, if not more, on the day of the shootings. Although defense counsel was prevented from asking about their individual long-term or prior use, the jury later heard the testimony of the forensic expert that repeated cocaine use could cause memory loss. The jury also heard some testimony that the trailer where the shootings occurred was the normal hang-out for these witnesses and victims to gather for the purpose of smoking crack.

The record reflects that there was sufficient information before the jury to question the memories and credibility of the State's eyewitnesses. Defense counsel was not prohibited from using this information to suggest to the jury that the witnesses testimony may have been affected by the drugs. After more favorable testimony was elicited from the defense's forensic expert, Dr. Sarah Deland, that long-term cocaine use could affect memory, counsel did not recall the eyewitnesses to further inquire into their drug use.

For these reasons, the record does not demonstrate that Matthews was denied a fair trial or that the trial court erred in limiting cross-examination of the State's witnesses. The state courts'

---

[51]*Id*. at 1169.

failure to grant relief was not contrary to or an unreasonable application of Supreme Court precedent and Matthews is not entitled to relief on this claim.

**B.        Denial of Motion for Mistrial Based on/and the *Brady* Violation**

The failure to grant a mistrial is a matter of state law and not of a constitutional dimension and is within the sound discretion of the state trial judge. *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988). The Constitution is only implicated when the denial of a motion for mistrial results in a fundamental unfairness which fatally infected the trial or which is of such a quality that it necessarily prevents a fair trial. *See Lisenba*, 314 U.S. at 219. In this case, to assess the constitutional impact of the denial of the motion, the Court will consider the propriety of that ruling under the rules of *Brady*, which also is based on due process and fair trial considerations.

The defense generally has the right to be provided evidence that is favorable to the defense and copies of any witness statements that relate to the subject matter of the witness's statement. The Supreme Court in *Brady* required the production of the exculpatory and impeachment evidence for reasons of due process and a violation thereof is reviewable on federal habeas review. *Brady*, 373 U.S. at 87. However, the failure to produce witness testimony is not of constitutional magnitude. *Martin v. Maggio*, 711 F.2d 1273, 1283 (5th Cir. 1983); *Calley v. Callaway*, 519 F.2d 184, 225-26 (5th Cir. 1975).

Further, the *Brady* disclosure requirement applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence. *See United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir.1989); *see also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994); *Andrews v. Collins*, 21 F.3d 612, 626 (5th Cir.1994). "If the evidence is inculpatory, then *Brady* is not violated, regardless of the effect at trial of the nondisclosure." *United States v. Gonzales*, 90 F.3d 1363, 1369

(8th Cir. 1996). Thus, only evidence that is exculpatory and material to guilt or that is favorable impeachment evidence must be disclosed by the prosecution for due process reasons. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.

In this case, under a broad reading, Matthews contends that the evidence of the State's witnesses' drug use on the day of the shootings was arguably impeachment evidence because it allegedly differed from the prior disclosures and statements to police and otherwise affected his counsel's ability to adequately cross-examine the witness and/or prepare a defense. "'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *6 (5th Cir. Apr. 16, 2002) (*quoting United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998)). However, these violations will only occur where the defendant is denied the opportunity to cross-examine or is prevented from putting a witness on the stand or from introducing evidence. *Id*.

The prosecution's production of impeachment evidence is covered by the rules of *Brady*. A claim that *Brady* was violated requires a showing that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Holley*, 23 F.3d 902, 914 (5th Cir. 1994) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

> Bagley's touchstone of materiality is a "reasonable probability" of a
> different result, and the adjective is important. The question is not
> whether the defendant would more likely than not have received a
> different verdict with the evidence, but whether in its absence he

received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

Significant to this case is the proposition that claims pursuant to *Brady* involve "'the discovery of evidence <u>after trial</u> of information which had been known to the prosecution but unknown to the defense.'" *Lawrence*, 42 F.3d at 257 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)) (emphasis added). This is not the case here.

In this case, Matthews's counsel, as well as Gage's and Pharagood's counsel, knew that drugs were involved in the incident and that each of the victims, including the surviving victim, had elevated drug levels in their systems. The Trial Court also determined that counsel knew that Matthews was allegedly engaged in drug activity at the trailer that day. The Court resolved that all of this had been discussed at pretrial hearings. In addition, the disclosure by the State regarding the witnesses' drug use, which was not in the police reports, was passed-on to defense counsel immediately upon its discovery. That, according the Trial Court, was either the day before trial or the morning of trial before jury selection commenced.

"[W]hen information is fully available to a defendant at the time of trial . . . the defendant has no Brady claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980). *Brady* does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted). The possible drug use by the victims' and witnesses', and certainly by any of the defendants, was or should have been known by defendants and their counsel. Nevertheless, the

witnesses' drug use was certainly known and disclosed at the time of trial and defense counsel was able to cross-examine each witness about their individual drug use at trial.

In addition to this, the Court also allowed the defense to obtain an expert, Dr. Sarah Deland, who testified that persistent cocaine use, whether intravenous or inhaled, would affect memory.[52] Dr. Deland also testified that anesthesia, alcohol, and trauma could also impact memory, especially when coupled with cocaine use. This testimony allowed counsel to further support their impeachment efforts regarding the effects of the witnesses' drug and alcohol use on the day of the shootings.

For these reasons, the record does not demonstrate that Matthews was denied a fair trial through the denial of the mistrial or violation of *Brady* due to the late disclosure of the witnesses' statements regarding their personal drug. Matthews is not entitled to relief on these claims and the state courts' failure to grant relief was not contrary to or an unreasonable application of Supreme Court precedent.

## VIII. Insufficient Evidence and Denial of the Motion for Post-verdict Judgment of Acquittal (Claim Nos. 4 and 5)

Matthews alleges that there was insufficient evidence to support a conviction against him as for second degree murder and that his motion for post-verdict judgment of acquittal should have been granted. He claims that the evidence did not establish that he was a principal to the shootings, that he had an intent to kill, or that he was engaged in an aggravated burglary at the time of the killings. The State alleges that the state courts' reasonably relied on federal law to deny relief on this claim.

---

[52] St. Rec. Vol. 10 of 15, Trial Transcript, pp. 1635-1641.

Matthews's counsel raised these claims on direct appeal to the Louisiana First Circuit, arguing that there was insufficient evidence of Matthews's participation to convict him as a principal in Gregory Robinson's murder; alternatively, the conviction should have been reduced to manslaughter. The Court denied relief and resolved that the evidence was sufficient under the standards in *Jackson v. Virginia*, 433 U.S. 307 (1979), and related state case law. In its reasoned decision, the Louisiana First Circuit held that a reasonable jury could have found under the facts and circumstantial evidence that Matthews had specific intent to commit second degree murder and that he aided and abetted Gage in achieving the murder. This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent writ application without reasons. *See Ylst*, 501 U.S. at 802.

To the extent Matthews claims the improper denial of his pro se post-verdict judgment of acquittal motion under state law, that claim does not warrant federal habeas corpus relief. Furthermore, under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B) (2010). Such a motion raises the question of sufficiency of the evidence and is therefore considered under a standard virtually identical to that applicable to appellate review of claims of insufficient evidence under *Jackson*. *State v. Jones*, 952 So. 2d 705, 707 (La. Ct. App. 2006) (citing *State v. Thibodeaux*, 750 So. 2d 916, 926 (La. 1999); *State v. Williams*, 891 So. 2d 26, 30 (La. Ct. App. 2004) (citing *State v. Brown*, 620 So. 2d 508, 513-514 (La. Ct. App. 1993). In Louisiana, appellate review of the denial of a motion for post-verdict judgment of acquittal also is controlled by the standards set forth in *Jackson*. *State v.*

*Durand*, 963 So. 2d 1028, 1033 (La. Ct. App. 2007).  This Court's review of Matthews's sufficiency of the evidence claim will be considered under *Jackson* as well.

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court.  The *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Claims of insufficient evidence present a mixed question of law and fact.  *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

The offense of second degree murder, relevant to this case, is defined by Louisiana law as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm . . ."  La. Rev. Stat. Ann. § 14:30.1 (2010).  Louisiana law also defines a "principal" as a person "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime."  La. Rev. Stat. Ann. § 14:24 (2010).  Not all principals are automatically guilty of the same grade of the offense.  However,  a principal may be charged with and convicted of a higher or lower degree of the crime, depending on the mental element proved at trial.  *State v. Tate*, 851 So. 2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505

So. 2d 714, 717 (La. 1987)).  It is not enough that his accomplice had the intent; the State must prove that the defendant had the required mental element, in this case specific intent.  *Id*.

The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. Ann. § 14:10(1) (2010).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  *State v. Sharlhorne*, 554 So. 2d 1317, 1321 (La. Ct. App. 1989); *Tate*, 851 So. 2d at 930 (citing *Brooks*, 505 So. 2d at 717).  To establish specific intent, the State must show that the defendant pulled the trigger, that he acted in concert with his co-perpetrator, or that he actively acquiesced in the use of deadly force.  *Tate*, 851 So. 2d at 930.

In this case, the jury heard the testimony of Evelyn Robertson who testified that Matthews had been at the trailer prior to the shooting to talk with Marida Arcement.[53]  Later, around 6:30 p.m., there was a knock at the door by someone announcing himself as "John."[54]  When the door was opened, Gage, Pharagood, and Matthews entered.[55]  She saw Gage and Pharagood with guns.[56]  Gage began arguing with Gregory Robinson over something, presumably drugs, that Robinson had; Marida Arcement told them to go outside.[57]  Then the shootings started, and she ran into the

---

[53]St. Rec. Vol. 8 of 15, Trial Transcript, pp. 1122-23.

[54]*Id*. at 1125-26.

[55]*Id*. at 1127.

[56]*Id*. at 1129-30.

[57]*Id*. at 1132.

bedroom to hide in the bathroom.[58]  She testified that "they were blocking the door" so she could not get out of the trailer.[59]  She explained that Matthews was standing in front of the door to the trailer and she could not get out because he was there.[60]

Marida Arcement also testified that Matthews went to the trailer earlier in the day to buy a $10 piece of crack cocaine.[61]  He smoked it and left.[62]  She testified that he returned later to buy another piece of crack cocaine for $8, which he took with him.[63]  About five minutes later, there was a knock at the trailer door by someone who said he was "John."  When she answered the door, she saw Gage, with Pharagood at his side.[64]  She recalled that Pharagood had a gun when he came in the door.[65]  She also testified that Matthews came in behind them and closed the door.[66]  Gage pointed a gun at Gregory Robinson and asked for his stuff, and she told them to go outside.[67]  When Gage began shooting, she ran into the bathroom in the bedroom.[68]  She testified that Matthews was still

---

[58]*Id*. at 1133.

[59]*Id*.

[60]*Id*. at 1143-43.

[61]St. Rec. Vol. 9 of 15, Trial Transcript, pp. 1232, 1234.

[62]*Id*. at 1234.

[63]*Id*. at 1235.

[64]*Id*. at 1238-39.

[65]*Id*. at 1240.

[66]*Id*. at 1241-42.

[67]*Id*. at 1242-43.

[68]*Id*. at 1243.

standing at the trailer door.  She stated that the door was not blocked necessarily, she just did not go that way.[69]

Similar to this, Lela Arcement testified that, at some point in the evening, Matthews entered the trailer to talk to Merida Arcement.[70]  About five minutes after he left, there was a knock at the door by someone named "John."[71]  When the door was opened by either Gregory or Merida, Gage, Pharagood, and then Matthews entered the trailer.[72]  She recalled that Matthews and Pharagood said nothing.[73]  She testified that, as Robinson passed Gage to go outside, a gunshot went off.[74]  Matthews just stood at the closed trailer door.[75]  She stayed where she was because the door was blocked and she felt that they would not let anyone out.[76]  She stated that after the initial shots, she saw Pharagood heading toward the door to go outside; that is when Gage shot her and then ran out the door.[77]

Thus, the jury heard the testimony from the surviving victim and witnesses which demonstrates that Matthews had been in the trailer just minutes before he returned with Gage and Pharagood, both of whom were carrying weapons.  Gage, with gun drawn, immediately initiated an

---

[69]*Id*. at 1245-46.

[70]St. Rec. Vol. 10 of 15, Trial Transcript, p. 1456.

[71]*Id*. at 1457.

[72]*Id*. at 1461.

[73]*Id*. at  1462.

[74]*Id*. at 1463.

[75]*Id*. at 1463, 1466.

[76]*Id*. at 1474.

[77]*Id*. at 1467, 1469-70.

verbal altercation with Robinson apparently over drugs. At no time did Matthews leave the room or exit out of the trailer door, where he stood until after the shooting began. The witnesses perceived that Matthews was blocking the only door to the trailer, which made there exit in that direction unlikely.

In addition to the foregoing and the forensic evidence, the jury also heard detailed testimony about the drug activity at the trailer that day, as well as the specific amounts of cocaine and alcohol ingested by the witnesses and victims.[78] Matthews suggests that no reasonable jury should have given credibility to the testimony where the witnesses' recollection was tainted by long-term drug use. The determination of the credibility of a witness is within the province of the jury. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions). The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact. *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1995) (citing *U.S. v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)). Based on the foregoing review, the record is replete with testimony and evidence that corroborates the witness testimony and supports the jury's decision to find that testimony credible. Matthews has not demonstrated a basis to challenge the jury's credibility resolve.

Furthermore, the testimony at trial demonstrated that Matthews was a willing and knowing participant in the events that occurred at the trailer that evening. The jury heard evidence that Matthews entered with the armed men and remained at the closed door, the only regular means of entry and exit from the trailer. His presence at the door was intimidating enough for at least two of

---

[78]St. Rec. Vol. 8 of 15, Trial Transcript, pp. 1120, 1125 (Evelyn Robertson); St. Rec. Vol. 9 of 15, Trial Transcript, pp. 1255, 1260 (Merida Arcement); St. Rec. Vol. 10 of 15, Trial Transcript, pp. 1450-51, 1485.

the witnesses to believe that they could not, or would not be allowed to, leave by that door. Matthews stood inside the closed door while Gage and Pharagood brandished their weapons, and he remained there after the shooting started.

Considered in the light most favorable to the prosecution, the record contains more than enough direct and circumstantial evidence to demonstrate that Matthews was willingly involved in the incident and had the specific intent to commit second degree murder. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law. Matthews is not entitled to relief on this claim.

## IX.    Denied Due Process During Prosecutor's Closing Argument (Claim No. 6)

Matthews argues that the prosecutor made inappropriate statements of fact during his closing argument which were prejudicial and therefore denied him due process and violated state law on the scope of closing arguments. Matthews references several statements made by the prosecutor during his closing argument where the prosecutor allegedly argues facts and theories that were not proven at trial. Specifically, he references several statements where the prosecutor summarized the events leading up to and at the trailer.

First, at one point, the prosecutor stated that the three men had a plan or common scheme from the beginning and that was to go to the trailer to kill.[79] Matthews claims that this was not proven. Second, the prosecutors stated that it was his job is to speak for the victims.[80] Matthews contends that this misstates the prosecutors job. Third, Matthews claims that the prosecutor

---

[79]St. Rec. Vol. 10 of 15, Trial Transcript, p. 1657.

[80]Id. at 1658.

misstated facts where he said that Matthews had been to the trailer two or three times that day.[81] Matthews claims this is a misstatement of fact designed to mislead the jury into thinking he was a scout for the others.

In a fourth statement, the prosecutor indicated that the three men entered in the following order: Gage, Pharagood, and then Matthews.[82] He then noted that the witnesses may have mixed up the order of arrival over the years. Matthews argues that the prosecutor knew and the evidence showed the order the men entered and to imply something else was prejudicial.

He also claims that there was no proof that he closed the door at the trailer. He also denies that the evidence proved that he was blocking the door, something the prosecutor claimed he did.[83] He also challenges that the prosecutor's comment that Gage was aided by Matthews and Pharagood and that there were two guns used in the crime.

In its opposition, the State summarily claims that the prosecutor's statements were not improper. Therefore, his claim on this issue should be denied.

Matthews first raised this claim in his application for post-conviction relief. The Trial Court denied relief on the application by referencing certain findings made by the Louisiana First Circuit on direct appeal regarding the sufficiency of the evidence. The Court also determined that Matthews had not established that his counsel was ineffective or that he was denied due process. The Court did not make specific findings related to this claims. This was the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 802.

---

[81] *Id*.

[82] *Id*. at 1659.

[83] *Id*. at 1660, 1663.

As discussed before, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). This court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court made the underlying proceeding fundamentally unfair. *Neyland*, 785 F.2d at 1293. Thus, the court can consider Matthews's arguments only in the context of federal constitutional law.

As a general matter, due process requires that state court proceedings be fundamentally fair. *Lisenba*, 314 U.S. at 236-37. A criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. *Id.*; *Peters*, 942 F.2d at 940. However, improper jury argument by the State does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's remark must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985). Thus, to obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

In this case, the prosecutor did not err by stating that he spoke for the victims. Such a comment is not error where the prosecutor makes no excessive appeal to the jury's sympathy. *United States v. Rodriguez*, 581 F.3d 775, 803 (6th Cir. 2009). The prosecutor's brief statement did not arise to that level. *Id.*

Furthermore, each of the prosecutor's comments were facts arising directly from the testimony of the surviving victim and witnesses, outlined in detail in the foregoing sections of this report. The testimonial evidence showed that the three men arrived together, shortly after Matthews made his second trip to the trailer that day. Gage and Pharagood arrived with guns drawn and Gage immediately demanded his stuff from Robinson. The witnesses testified that Matthews stayed by the door and led at least two of them to believe that they would not be allowed to exit that way. The evidence also showed that the surviving victim, Lela Arcement, was shot with two different guns. Contrary to Matthews contentions, each of the prosecutor's statements were factually supported.

Considering the trial as a whole, the prosecutor's comments were not out of line with the evidence and did not amount to misconduct. Matthews has not shown that the prosecutor's statements unduly prejudiced the jury. The comments did not render the trial fundamentally unfair or violate due process. The state courts' denial of relief was not contrary to, nor an unreasonable application of, United States Supreme Court precedent. Accordingly, Matthews is not entitled to relief on this claim.

## X.    Ineffective Assistance of Counsel (Claim Nos. 7, 8, and 9)

Matthews alleges that his counsel gave ineffective assistance where he failed to object to the inappropriate factual comments made by the prosecutor during closing arguments. He also claims that his counsel should have objected to the amended indictment which added the new charge and

new defendant. Matthews also claims counsel was ineffective for failure to recall the State's witnesses to discuss their prior drug use as a challenge to their credibility.

The State argues that counsel was not ineffective. Therefore, it claims that Matthews's request should be denied on this issue.

Matthews first raised this claim in his application for post-conviction relief. Citing *Strickland v. Washington*, 466 U.S. 668 (1984), and related state law, the Trial Court summarily ruled that counsel's performance was not deficient. This was the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 802.

In *Strickland*, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart*

*v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some

conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

### A.      **Failure to Object to Prosecutor's Closing Arguments**

Matthews claims that his counsel should have objected to the prejudicial comments made by the prosecutor during his closing argument. This Court has thoroughly reviewed each of the comments challenged by Matthews. In the foregoing section of this report, the Court has resolved that the comments made by the prosecutor were factually based, were not unduly prejudicial, and did not deny Matthews due process. Matthews's counsel was not required to lodge a meritless objection to the State's closing argument. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Counsel's failure to object was not deficient performance and was not prejudicial to Matthews.

### B.      **Failure to Object to Amended Indictment**

On direct appeal, Matthews's counsel questioned the State's second amendment to the indictment, on September 27, 1999, to add as a co-defendant Christopher John Gage, in the charges already brought against Matthews and Pharagood, for the second degree murders of Carter, Robinson, and Johnson, and to add a new count against all three defendants for the attempted second

degree murder of Lela Arcement.[84]  As discussed thoroughly above, the Louisiana First Circuit ultimately dismissed this claim as procedurally defaulted under state law.

Before reaching that decision, the appellate court commented that it was not error under state law for the State to alter the charges against Matthews and Pharagood, who had already been indicted together.  However, the Court noted that La. Code Crim. P. art. 706 would not allow the State to join separately indicted defendants into one indictment without the consent of the affected defendants.  Without further analysis, the Court dismissed the claim as procedurally defaulted since none of the defendants filed a motion to quash that amended indictment.

The record reflects that on September 27, 1999, the State announced to the Court that it had an amended complaint on which the defendants needed to be arraigned.[85]  All of the defendants and their counsel were present.  No one objected to the amendment.  Matthews's counsel in fact responded "Okay" when the prosecutor stated "[w]e're putting it all on one Bill of Information."[86]

Matthews has not shown that the failure to oppose the amendment was anything more than a strategic decision on the part of counsel.  A reading of the record reflects that both the State and counsel were anxious to move the case forward in the most expeditious manner.[87]  Nevertheless, counsel's failure to object to the amended indictment, however, did not cause any prejudice to Matthews.

As resolved previously, the defenses of the defendants were not antagonistic to each other and there was no constitutional basis for severing the trials.  Each of them was accused of

---

[84]St. Rec. Vol. 2 of 15, Amended Indictment, Case No. 303250, 9/27/99.

[85]St. Rec. Vol. 4 of 15, Hearing Transcript, 9/27/99.

[86]*Id*. at 4.

[87]*See, e.g.*, St. Rec. Vol. 4 of 15, Hearing Transcript, 9/27/99; Hearing Transcript, 10/13/99.

participating or aiding in the same murderous intrusion. Thus, there was no prejudice or denial of due process arising from Matthews's joint trial. Similarly, counsel's failure to object to the amended indictment charging them in the common crime did not result in prejudice to the outcome of the case or denial of due process at his trial. Matthews is not entitled to relief on this claim.

### C.     Failure to Recall State's Witnesses

Finally, Matthews alleges that his counsel erred in failing to recall the State's witnesses to discuss their drug use in an effort to further challenge their credibility. As discussed thoroughly above, counsel was allowed to cross-exam the State's witnesses with respect to their drug use on the day of the murder. After the State and defense counsel realized that the witnesses had not told police that they had been using drugs, the Trial Court allowed the defense to call their own expert for the purpose of establishing the effects of crack cocaine use on memory.

The evidence before the jury was more than adequate to establish that each of the victims had high levels of cocaine in their systems, that one victim died with a crack pipe in her hand, that crack cocaine and alcohol were prevalent in the trailer that day, and that each of the State's witnesses admittedly used crack cocaine and/or alcohol on the day of the murders. This evidence was coupled with Dr. Deland's clear testimony that cocaine use, especially long term use, effects a person's memory.

Matthews has not demonstrated by any means that the State's witnesses would have or could have provided any more information about their drug use which would have change the jury's credibility determination. Without such a showing, Matthews has not established that counsel erred in failing to recall them and he has not establish that the failure to recall them adversely affected the verdict.

For the foregoing reasons, the state courts' denial of relief on Matthews's ineffective assistance of counsel claims was not contrary to, nor an unreasonable application of, United States Supreme Court precedent. Accordingly, Matthews is not entitled to relief on these claims.

## XI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Gary Matthews's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[88]

New Orleans, Louisiana, this ___12th___ day of July, 2010.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[88]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.